IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Criminal Case No. 1:17-cr-00432-PAB**

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**

**1.    MICHELLE MEDINA,**

     **Defendant.**

---

### GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR A VARIANT SENTENCE [DOC. 25] AND GOVERNMENT'S SENTENCING STATEMENT

---

The United States of America, by Richard E. Zuckerman, Principal Deputy Assistant Attorney General, Tax Division, United States Department of Justice, and through Kathleen M. Barry, Trial Attorney, Tax Division, United States Department of Justice, respectfully files this response to Defendant's Sentencing Memorandum and Request for Downward Departure and Variance [Doc. 25], and Government's Sentencing Statement.

**I.    PROCEDURAL HISTORY**

On November 15, 2017, the defendant waived the right to proceed by indictment and entered a plea of not guilty to an information charging her with one count of Evasion of Assessment of Tax, a violation of 26 U.S.C. § 7201 [Doc.s 1, 4]. On November 17, 2017, the defendant filed a Notice of Disposition [Doc. 9]. On December 12, 2017, the defendant entered a guilty plea to the sole count, Count 1 of the Information, Evasion of Assessment of Tax [Doc. 1], pursuant to a written plea agreement with the United States [Doc. 15]. This Court accepted her

plea of guilty and deferred approval of the plea agreement pending preparation of the presentence report [Doc. 14, courtroom minutes]. In the plea agreement, the parties calculated the U.S. Sentencing Guidelines (U.S.S.G.) range applicable to the defendant. The parties agreed that the base offense level is 20 under § 2T4.1(H) of the U.S.S.G. The parties also agreed that the defendant is entitled to a two-point reduction for acceptance of responsibility under § 3E1.1(a) U.S.S.G. and that the government will move for a further one-point reduction for early notification of intent to plead guilty under § 3E1.1(b). After the appropriate reduction for acceptance of responsibility and early notification, the resulting offense level is 17, which corresponds to a sentencing range of twenty-four (24) to thirty (30) months imprisonment. The case was originally set for sentencing on March 13, 2018 [Doc. 14]. The defendant filed a motion to continue sentencing on February 23, 2018 [Doc. 19]. The Court granted the motion on February 26, 2018 [Doc. 20]. Sentencing was rescheduled for May 18, 2018 and then rescheduled for June 14, 2018 [Doc.s 21, 22].

On May 30, 2018, the government filed a Notice of Parties' Stipulation as to Restitution Amount of $841,327.00 [Doc. 24]. The government respectfully requests that the Court adopt this restitution amount and tax loss amount.

## II. PRESENTENCE INVESTIGATION REPORT

### A. The United States Probation Office recommends a sentence of 24 months imprisonment.

The United States Probation Office has prepared a Presentence Investigation Report (PSIR) [Doc. 17]. A draft PSIR was sent to counsel on February 6, 2018. The defendant filed objections on February 20, 2018 [Doc. 18]. The government did not file any objections. Probation has not filed an addendum. Pursuant to its review, the Probation Office determined that the Guidelines range applicable to the defendant is 24 to 30 months imprisonment as agreed

in the plea agreement. [PSIR p. 16] The Probation Office has recommended a guidelines sentence, at the low end, of 24 months. [PSIR R-1] The Probation Office also recommended a follow on three-year period of supervised release. [PSIR R-1] In recommending a sentence of 24 months' imprisonment the Probation Officer states: "The undersigned does not believe a probationary sentence is appropriate at this juncture and would provide little to no deterrence or just punishment as life now would continue to be the same for the defendant, with the exception of the imposition of some conditions, a small inconvenience in her daily life." (PSIR R-4) Furthermore, the Probation Office noted the longevity of the offense, the deception of the IRS, and notably "the apparent greed of the defendant." [PSIR R-4]

      B.    <u>The defendant's objections to the PSIR are baseless and not pertinent to the determination of an appropriate sentence.</u>

The defendant broadly objects to the PSIR as an attempt to "disparage" the defendant. [Doc. 17] Allegations of criminal acts are – by their very nature – disparaging. The defendant attempts to justify her failure to file several years of corporate returns by claiming that she did not file corporate tax returns based on the advice of her previous legal defense counsel. However, the corporate income tax returns at issue (2008 through 2011) were several years delinquent when the defendant became aware of the criminal investigation in March of 2014.  To blame her failure to file corporate returns on the advice of an attorney who was hired five years after the earliest return was due is disingenuous at best, and an outright falsity at worst.

The defendant also objects to the notation of a number of sets of books, or QuickBooks, in the PSIR. The multiplicity of business records is not a fact to disregard. In addition to having multiple business records, the defendant utilized multiple tax return preparers. During the course of the investigation, the government interviewed and/ or obtained testimony from at least sixteen different tax return preparers and / or bookkeepers related to the defendant and her businesses.

The one tax return preparer referenced in the defendant's objections to the PSIR, also happens to be an attorney. However, he never acted as an attorney for the defendant. Rather, his purpose was tax return preparation. He did not prepare a corporate return because the defendant told him RHHS, Inc. operated under a loss that year (2008). The sheer number of tax return preparers complicated and lengthened the criminal investigation. These facts are relevant to the Court's examination of the defendant's behavior. Any purported disparagement in the PSIR arises from the defendant's own criminal acts.

## III.   GOVERNMENT'S SENTENCING POSITION

### A.   <u>An objective analysis of the facts of this case supports the government's position that a 30 month imprisonment term is appropriate.</u>

Though she now portrays herself otherwise, the defendant has led a fortunate life. She was fortunate to inherit a successful home healthcare business from her mother. The inherited business, RHHS, Inc., was under the complete control of the defendant from 2008 through 2011. During that time, the buck literally stopped with the defendant. Per her own admissions, the business receipts found their way on a regular and significant basis into the defendant's own pockets. Notably, the primary source of income to the home healthcare business were government funds. In 2008, RHHS, Inc. received over $3.6 million dollars from the State of Colorado for Medicaid payments. (PSIR Appendix B).  In 2009, RHHS, Inc. received over $3.3 million dollars from the State of Colorado for Medicaid payments. (*Id.*) Finally, in each year 2010 and 2011, RHHS, Inc. received over $2.7 million dollars from the State of Colorado for Medicaid payments. (*Id.*) For the four tax years at issue, the defendant's business received over $12.6 million dollars in state Medicaid payments. The flow of government dollars went one way to the defendant's business. Yet, the defendant, as the sole corporate representative and owner of RHHS, Inc., failed to pay over $380,214.00 in corporate income taxes to the United States.

4

During the same four years, the defendant used corporate funds for her personal benefit and failed to pay $461,113.00 in individual income taxes due on those funds.  For three of the four years, she even obtained tax refunds from the IRS. For four years, the defendant took the business, the funds with which her state and country enriched her business, and chose to pocket almost one million dollars in income taxes that were due on those funds.  The defendant's tax crime is particularly troubling considering the funneling of government funds into her business. 30 months is a just punishment to her lengthy scheme of taking government funds from the tax dollars of others while not paying her fair share of taxes.

> B.    <u>Pursuant to the § 3553 factors the defendant should be sentenced to a guideline sentence of 30 months.</u>

The government acknowledges that the Sentencing Guidelines are advisory rather than statutorily mandated. *United States v. Booker*, 543 U.S. 220 (2005). However, when imposing a sentence, the Court is not only required to consider the guidelines, but it must fashion a sentence that "is sufficient but not greater than necessary" to comply with the factors detailed in 18 U.S.C. § 3553(a). This require the Court to consider the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(1)-(2). Here, after proper consideration of the § 3553(a) factors, the proper sentence for the defendant is a sentence at the high end of the applicable guideline range. The three level reduction for acceptance of responsibility that the parties agreed to in the plea

agreement gives the defendant appropriate credit for acknowledging and admitting to her criminal conduct.  The defendant should be sentenced to a term of 30 months imprisonment.

1.     *Nature and Circumstances of the Offense*

Just as the Court considers an individual's criminal history for sentencing, a tax criminal's tax history is also relevant. Today, half way through the 2018 calendar year, the defendant and her business still have pending cases in the United States Tax Court from tax years that are more than a decade old. The Tax Court matters are stayed pending the criminal investigation. The tax, penalty and interest at stake on the defendant's individual income taxes for 2006 and 2007 is approximately $1,355,260.00. [Doc. 15 p. 11] Although the defendant disputes the amount, and it is not included for relevant conduct as it is unsettled, the defendant's tax compliance history is nonetheless remarkable. Over a decade has passed, yet she still has not resolved her this outstanding tax liability. Further exacerbating the defendant's tax compliance history, she admitted that she willfully failed to file corporate income tax returns for RHHS, Inc. for the tax years at issue in this criminal case, 2008, 2009, 2010, and 2011. [Doc. 15 p. 11]  In addition, the defendant admitted that for the 2008, 2009, and 2010 tax years, she filed false and fraudulent individual income tax returns with the IRS. [Doc. 15 pp. 9-10] The government contends that her 2011 tax return was also false and fraudulent because of an improper real estate loss.  Each individual income tax return was filed with the IRS under the penalty of perjury.

Yet, filing false individual income tax returns for four years did not fully satisfy the defendant. For the 2008, 2009, and 2010 tax years, she claimed refunds totaling over $16,000.00. In filing false returns and obtaining refunds through those false returns, the defendant did not just evade taxation; she fraudulently obtained money from the United States. False individual income

tax returns, non-filed corporate income tax returns, and aging Tax Court disputes over both individual income and corporate income taxes, this is the defendant's tax history.

In addition to her tax history, the defendant's acts frustrated and delayed the investigation and resolution of her tax issues. She told the IRS that she was not married. Indeed, she told the IRS that she did not even have a relationship with her husband. Now, in her sentencing memorandum, she readily admits that she has been married to her husband since 1998. [Doc. 25 p. 2] The defendant discloses the marriage now that its degradation is a helpful fact in her plea for home confinement. She also told the IRS that she never commingled personal and business funds. She admits now that she did so all four years. As stated previously, the defendant interacted with at least sixteen different tax return preparers. In order to unravel the defendant's tax activity, the government had to uncover and then interview each of these tax return preparers. The defendant even used preparers simultaneously – without telling the other preparer. The defendant now admits that she never told her return preparers that she was paying personal expenses from the business. She also withdrew or authorized the withdrawal of over $450,000 in cash from the business over the four years at issue. Cash is a challenging form of funds to trace. Though she disputes the fact, the government contends that the defendant characterized personal expenses as business expenses in her records as well. The sheer number of preparers, coupled with the preparation of tax returns that are never filed, created a layer of intricacy, which shielded the defendant's tax activity. The government's position is that the multiplicity is not the conduct of a naïve taxpayer. No, the multiplicity is the conduct of a tax evader. Her conduct was obfuscating to the IRS.

Real estate records also show that the defendant engaged in multiple real estate transactions during the relevant to current time periods. The resulting profit was not used to pay

her tax liability. According to the defendant's own statements, she sold her own home in 2014 and netted approximately $580,000.00. She contends that her spouse dissipated the money. [Doc. 25 p. 4] The investigation uncovered multiple real estate properties owned by or relating to the defendant and her spouse during the times at issue. Yet, there is no reference to the disposition of these properties or the resultant proceeds in the defendant's restitution plans. The only reference is to her spouse spending money.

2.    *Need for Sentence to Reflect Seriousness of the Offense, Promote Respect For the Law, and Provide Just Punishment*

The defendant's crime of tax evasion is a serious criminal offense. Many would consider it the most serious of tax crimes. As the Guidelines recognize, "[t]ax offenses, in and of themselves, are serious offenses." § 2T1.1 cmt. background. Criminal tax prosecutions serve a dual purpose: to punish the violator and to promote respect for the tax laws. While general deterrence is one of the prescribed goals for any sentencing, it occupies an especially important role in sentencing for criminal tax offenses, because criminal tax prosecutions are relatively rare:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

§ 2T1, introductory cmt; *see also United States v. Burgos*, 276 F.3d 1284, 1290 (11th Cir. 2001) ("[f]or a judge sentencing a defendant convicted of tax evasion, the chief concern may be general deterrence"); *United States v. Hoskins*, 654 F.3d 1086, 1103 (10th Cir. 2011) (Briscoe, C.J., concurring in part and dissenting in part) (emphasizing importance of deterrence in sentencing for tax offenses).

8

The defendant's crime is further exacerbated in that her lifestyle was essentially funded with government money. The facts indicate that the defendant may not fully understand the seriousness of her criminal activity. In presenting her family situation as a reason for variance, the defendant states that two of her children are being home schooled. [Doc. 25 p. 13] Yet, when the Probation Office conducted a home visit, the defendant told the officer that the children were at school. [Doc. 17 p. 11]  The day prior to her initial appearance, the defendant withdrew $18,013 from her bank accounts. In the days prior, she spent $2,885.58 on two cell phones. In addition, in November 2017, the defendant cashed in a $40,000 annuity and deposited the funds. After a garnishment, the defendant promptly withdrew the remaining funds as cash. She has not used the money to pay taxes. Based upon the PSIR, the defendant also went through $116,000 between August 2017 and November 2017. [PSIR p. 16] These are not the actions of a remorseful individual, nor those of an individual who intends to compensate her victim. Rather, this conduct is in line with the continuation of the defendant's criminal tax behavior. These acts are evidence that respect for the law requires incarceration.

3.    *Afford Adequate Deterrence*

One of the paramount factors the Court must consider in imposing sentence under § 3553(a) is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The government respectfully submits that a substantial term of imprisonment—that is, within the Guidelines range—is essential to achieve the goals of general and specific deterrence, especially given nature and history of this defendant and the nature of the tax fraud scheme involved.

As a result of the significant resources required to mount a criminal tax prosecution, criminal tax prosecutions are relatively rare. As the Sentencing Commission explained:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these Guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. ch 2, pt. T, introductory cmt. Where the incidence of prosecution is lower, the level of punishment must be higher to obtain the same level of deterrence. *See generally*, Louis Kaplow and Steven Shavell, "Fairness Versus Welfare," 114 Harv. L. Rev. 961, 1225-1303 (2001).

General deterrence is an essential means of minimizing the ever-increasing amount of money estimated to be lost each year through tax fraud. The United States tax system relies on voluntary compliance. *See United States* v. *Ture*, 450 F.3d 352, 357 (8th Cir. 2006) ("The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system"). "Studies have shown that salient examples of tax-enforcement actions against specific taxpayers, especially those that involve criminal sanctions, have a significant and positive deterrent effect." Joshua D. Blank, *In Defense of Individual Tax Privacy*, 61 Emory L.J. 265, 321 (2011-2012).

These studies emphasize the impact that noncompliance with the tax code has on the United States Treasury and the deterrent impact prison sentences have on other potential tax scofflaws. Hundreds of billions of dollars are lost annually because people like Medina —who otherwise take full advantage of all that taxes bring, such as schools, paved roads, transit systems, and government buildings—choose to shirk their responsibilities as American taxpayers. Widespread noncompliance with the Internal Revenue Code is an ongoing problem that merits every court's consideration when sentencing defendants for committing tax offenses. Meaningful sentences—that is, ones that, through their terms, speak loudly—must be given in

cases such as this so that others are forewarned of the consequences for engaging in such long-running tax crimes.

> Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

*United States* v. *Engle*, 592 F.3d 495, 502 (4th Cir. 2010).

In sum, the Government cannot ensure compliance with the Internal Revenue Code if the general public believes there are no meaningful repercussions for failing to comply with tax laws and regulations. Sentencing Medina to a significant term of incarceration will convey the message to others that systematic and repeated efforts to attempt to extinguish or pay tax liabilities will be met with harsh punishment.

To date, the defendant deflects responsibility for her crime on others. She blames her failure to file delinquent corporate income tax returns on the advice of counsel. This blame arises despite the passage of many years between due dates for the returns and the advice. She shifts responsibility to the IRS for "official transcripts […] riddled with errors." [Doc. 25 p. 6] She states that she mistakenly waited for the IRS to tell her what she owed. [Doc. 25 p. 6] Moreover, she blames her spouse for taking the tax money. [Doc. 25 p.4] She has accepted responsibility in part, but she has yet to fully embrace it.

True deterrence for this tax criminal – and for other potential tax criminals – demands a custodial sentence. The defendant contends that her humiliation, threat of loss of license, loss of personal freedom if confined to her home, and learning to live extremely modestly are sufficient deterrence. [Doc. 25 pp. 8, 9] The government strongly disagrees. The defendant appears to have closed her business. A closed business with no assets. A sole corporate owner and officer with no

evidence of responsibility for $380,214.00 in corporate income taxes (before penalty and interest). While the defendant has made minor tax payments on her individual income tax obligations, her corporate income tax obligations do not appear on her radar. Rather, the facts suggest that the defendant is not motivated to pay her corporate obligations. With a pending Tax Court matter about corporate income tax liability as well, the defendant appears to be embarking down the path of abandonment of her corporate income tax responsibilities rather than embracing them.

Several of the defendant's employees have been interviewed and or testified during this lengthy investigation. They are aware of these proceedings. The defendant assisted at least three of her employees with their own illicit activity. The defendant assisted one employee, who does not have legal status in this country, to start a business through which she could receive her income. A second employee, who also does not have legal status, was paid under another individual's name. A third known employee was also paid through a business to shield her wages. The defendant's former employees need to see that tax crime does not pay. Absent a strong prison sentence, the deterrent effect from this case will be lost. Employees, tax return preparers, community business owners will see the result of this case. The community may conclude that the risks of punishment are far less severe than the financial and business rewards.

The defendant's contention that "severe financial penalties" are sufficient deterrence is undermined by her additional assertion that a fine is inappropriate in this instance. Restitution is not a severe financial penalty. Restitution is repaying what was wrongfully obtained.

4.    *Protect the Public from Further Crimes of the Defendant*

A crime committed against the collective fiscal funds of the United States of America is a crime against the public. Indeed, tax evasion has an effect on the entire population.

During the 2008 through 2010 period, the IRS estimates that the tax gap was $458 billion, reduced to $406 billion after enforcement activities and late payments. (See, www.irs.gov/newsroom/the-tax-gap.com) Although the defendant's $841,327.00 tax loss is a drop in the bucket, such significant drops add up to a simply staggering tax gap. The defendant's sentence needs to insure that the defendant never commits such a crime again. The government and the Probation Office agree that a probationary sentence will not deter the defendant. A term of imprisonment is necessary.

## IV.   DEPARTURE

A downward departure is wholly unwarranted in this case. As in every case involving the incarceration of a parent, there is a natural sympathy toward the children. The case law and the sentencing guidelines are clear, however, that absent extraordinary circumstances, such family consequences are not a reason to depart downward.

> The Supreme Court has made it clear that when a factor is discouraged because it is not "ordinarily relevant," or when the factor has already been taken into consideration by the guidelines, "the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present."

*United States v. Archuleta*, 128 F.3d 1446, 1449 (10th Cir. 1997) citing *Koon v. United States*, 116 S. Ct. 2035, 2045 (1996). The specific issue of single parents has also been addressed in this Circuit: "While we are not unsympathetic to the circumstances facing defendant's children, defendant has not shown that these circumstances are substantially different than those facing the minor children of any single parent who is about to be incarcerated." *Archuleta*, 128 F.3d at 1451. "*Archuleta* is consistent with the case law of other circuits, which have reversed family-circumstances departures absent evidence that the defendant was the only individual able to provide the assistance a family member needs." *United States v. McClatchey,* 316 F.3d 1122,

1131-1132 (10th Cir. 2003) (citations omitted). There is nothing about the defendant's familial situation nor the position, one in which she has willfully placed her family, that is extraordinary. A downward departure is not warranted.

## V.   CONCLUSION

A sentence of 30 months of imprisonment is fair and just in this case. There are no reasons to impose a non-guidelines sentence in this case. A sentence that does not include a term of imprisonment would undermine the deterrent effect of this case for the defendant and the community. Restitution in the amount of $841,327.00 should also be ordered as part of her sentence.

WHEREFORE, the government requests that this Court impose a sentence to imprisonment of thirty months followed by a three year period of supervised release.

Respectfully submitted this 5th day of June, 2018.


RICHARD E. ZUCKERMAN
Principal Deputy Attorney General
Tax Division
United States Department of Justice

By: /s/ *Kathleen M. Barry*
Trial Attorney
Tax Division
United States Department of Justice
601 D Street N.W., Room 7334
Washington, D.C. 20044
Telephone: (202) 514-5762
Fax: (202) 514-9623
e-mail: Kathleen.M.Barry@usdoj.gov
Attorney for the Government

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT ON THIS 5th DAY OF June, 2018, I electronically filed the foregoing GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE AND GOVERNMENT'S SENTENCING STATEMENT using the CM/ECF system which will send notification of such filing to the following e-mail address:

Amanda B. Cruser, Esq.
E-mail: abcruser@vfblaw.com
Attorney for Michelle Medina.


/s/ *Kathleen M. Barry*
Trial Attorney, Tax Division
United States Department of Justice